# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNA ABRAHAM, MARK ANDERSON, RONALD DRAKE, LUTYSHIA EMERSON, LAVERNE GALLANT, EDGELL JUSTIN, and CYNTHIA OLIVER, individually and on behalf of other similar situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Defendants. | Case No. 19-cv-3028 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, Plaintiffs' motion to remand [16] is denied. Given the passage of time and the current COVID-19 crisis, Defendant's unbriefed motion to dismiss [11] is stricken without prejudice to refiling on or before April 20, 2020. The parties are directed to submit a joint status report by April 27, 2020 proposing a briefing schedule for the motion to dismiss. This case is set for further status hearing on April 30, 2020.

**I.  Background**

Plaintiffs brought a purported class action in the Circuit Court of Cook County alleging that Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") failed to pay or deny certain insurance claims, or explain the need for more information about the claim, within a 30-day statutory period. Plaintiffs propose two classes—policyholders who made claims and received inadequate responses from Defendant, and policyholders between 2016 and

2018—and seek declaratory or, in the alternative, injunctive relief. Defendant removed the case to the Northern District of Illinois, claiming jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiffs now seek remand on the ground that jurisdiction under CAFA is lacking because Defendant has not shown the requisite amount in controversy.

Plaintiffs Mark Anderson, Ronald Drake, Laverne Gallant, and Cynthia Oliver are residents of the State of Michigan and State Farm policyholders. [1-1, at ¶3.] In addition to being a State Farm policyholder, plaintiff Cynthia Oliver is currently insured by State Farm as a claimant under a Personal Injury Protection ("PIP") policy, due to injuries she sustained in a covered motor vehicle accident. *Id.* Plaintiffs Anna Abraham, Lutyshia Emerson, and Edgell Justin are likewise insured by State Farm by virtue of their status as PIP claimants. [*Id.* at ¶4.] Each of the plaintiffs is thus a State Farm policyholder, a State Farm PIP claimant, or both.

Defendant State Farm Mutual Automobile Insurance Company is an Illinois corporation. State Farm regularly sells automobile insurance (including PIP coverage) and is an underwriter of automobile insurance within the states of Delaware, Florida, Hawaii, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, New York, North Dakota, Oregon, Pennsylvania, Texas, and Utah (the "PIP states"). [17-2, at ¶¶ 5-6.] The PIP states have no fault auto-insurance statutes that regulate the sale, issuance, and administration of PIP coverage. [*Id.* at ¶ 11.] The PIP statute in each of these states regulates (at a minimum) insurance coverage for medical expenses and lost wages arising from injuries incurred in an auto accident. [*Id.* at ¶ 12.]

PIP coverage is afforded to the injured person on a no-fault basis; that is, without regard to the injured person's relative fault in causing the auto accident that gave rise to that person's injuries. [*Id.* at ¶ 13.] Under the laws of each of the PIP states, a PIP insurer presented with a claim for PIP benefits—typically in the form of a medical bill—must take some form of meaningful

action within 30 days of the insurer's receipt of the claim. [*Id.* at ¶ 114.] A PIP insurer presented with a claim for PIP benefits must:

- Pay all or part of the claim;

- Advise the claimant in writing, within 30 days of the insurer's receipt of the claim, that further, specified information or verification is required in order to process the claim; or

- Advise the claimant in writing, within 30 days of the insurer's receipt of the claim, that all or part of the claim is denied. [*Id.* at ¶ 15.]

In the event that the PIP insurer denies all or part of the claim, it must advise the claimant in writing, within 30 days of the insurer's receipt of the claim, of the reason(s) for the denial. [*Id.* at ¶ 16.] The legal standards described above are uniform throughout the PIP states. [*Id.* at ¶ 17.]

Plaintiffs Abraham, Emerson, Justin, and Oliver submitted certain medical-expense-related PIP claims and received letters from Defendants stating, in relevant part, "This matter is presently under investigation and as soon as a determination has been made, you will be notified." [*Id.* at ¶¶ 23-24.] Plaintiffs assert that the letters do not comply with the PIP statues because they do not pay the claim, deny the claim, or inform the client of a need for more information within 30 days. [*Id.* at ¶ 28.] Plaintiffs also claim that, by employing these practices, Defendant unilaterally diminished the value of the auto policies (and, more particularly, the PIP coverage) that it sold and issued to Plaintiff Anderson, Gallant, and Oliver. [*Id.* at ¶ 32.]

Plaintiffs commenced this purported class action lawsuit in the Circuit Court of Cook County, Illinois on March 25, 2019. The complaint outlines two proposed classes. Proposed Class A is all PIP claimants in the PIP states who, since March 25, 2016, submitted to State Farm a claim for PIP benefits to which State Farm responded that it was investigating, offered no explanation for failing to complete its investigation within 30 days, and neither paid within 30 days nor

communicated in writing the reason for withholding benefits within 30 days. [*Id.* at ¶ 33.] Proposed Class B is all of State Farm's current auto insurance policyholders in the PIP states. [*Id.*]

Count I seeks a declaration that Defendant's "we're investigating" letters violate the legal requirements for handling PIP claims in the PIP states. [*Id.* at ¶ 36.] In the alternative, Count II seeks an injunction ordering Defendant to comply with the various PIP statutes and, within the 30-day window, either pay claims or explain that additional information is needed or deny the claim an provide an explanation for the denial. [*Id.* at ¶ 57.]

On May 3, 2019, State Farm removed the case to this Court, ostensibly under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Plaintiffs moved to remand. [16.]

Plaintiff Abraham [see 1-2], Plaintiff Emerson [see 1-3], Plaintiff Edgell [see 1-4], and Plaintiff Oliver [see 1-5] also filed suits against State Farm in the Circuit Court of Wayne County, Michigan. The complaints in those cases assert, among other things, that State Farm refused to pay or unreasonably delayed paying PIP benefits and seek at least $25,000 each in damages.

## II. Legal Standard

Removal of actions from state to federal court is governed by 28 U.S.C. § 1441. That statute provides that, except as otherwise provided, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, federal courts have jurisdiction over cases in which the amount in controversy exceeds $5 million, the class contains at least 100 members, and, as relevant here, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 330 (7th Cir. 2009) (citing 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B)).

The party invoking federal jurisdiction—here, Defendant—bears the burden of proving its existence. *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). When a complaint fails to allege the amount of damages, the removing defendant must only assert "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 88 (2014). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.* at 89.

"Evidence establishing the amount [in controversy] is required by §1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Cherokee Basin*, 574 U.S. at 89. If the plaintiff subsequently seeks to remand to state court, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. (emphasis supplied). "[U]nless recovery of an amount exceeding the jurisdictional minimum is legally impossible, the case belongs in federal court." *Back Doctors Ltd. v. Metropolitan Property and Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

The fact that the relief sought is declaratory or injunctive rather than monetary does not eliminate the need to assess an amount in controversy. Instead, a district court applying the jurisdictional threshold must attempt to measure the amount in controversy "by the value of the object of the litigation." *Johnson v. Hunt*, 2015 WL 3396798, at *4 (N.D. Ill. May 26, 2015) (quoting *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347–48 (1977)). The value of the injunctive or declaratory relief must necessarily be estimated, and may be assessed from either party's viewpoint. See *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (noting that in equitable relief cases, the amount in controversy may be "what a judgment

5

would be worth to the plaintiff, or what compliance with an injunction would cost the defendant"). Thus, as the Seventh Circuit explained in *Keeling v. Estrange Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011), courts assessing the amount in controversy in lawsuits seeking prospective equitable relief must consider, among other things, the cost to "comply with an injunction," "if the class is right." For example, if an insurance company would be required either to stop charging a premium or change the terms of its policy so that policyholders receive indemnity more frequently, the cost of this "prospective relief cannot be ignored in the calculation of the amount in controversy." *Id*. The court of appeals also reminded courts and litigants alike of the "legally impossible" standard to defeat CAFA jurisdiction over amount in controversy, granting a petition for leave to appeal and summarily reversing the district court where an award greater than the $5 million statutory threshold was "[i]mprobable, perhaps, but not impossible." *Id*. at 275.

### III. Analysis

Defendant proposes two objects of the litigation and measures of the amount in controversy. For Proposed Class B, Defendant frames the object of the litigation as the damages arising from the alleged diminished value of the PIP policies. [21, at 8.] Defendant submitted an affidavit stating that the value of PIP premiums paid for 2016 through 2018 is more than $2 billion per year; if the diminished value of the policies is even a tiny fraction of that, Defendant argues, the $5 million CAFA threshold is met. For Proposed Class A, Defendant says the object of the litigation is damages arising from the alleged prejudice to Plaintiffs' ability to assess and, if appropriate, contest State Farm's withholding of benefits. [*Id*.] As a measure of damages, Defendant multiplies Plaintiffs' claimed minimum damages in the Michigan suits ($25,000, see, *e.g.*, [1-2, at 8]) by the minimum number of alleged class members (10,000) (see [1-1 at ¶ 34]).

[21 at 9-10.][1]  This too, according to Defendant, puts more than $5 million at issue.  Defendant also provided evidence that it has paid more than $4 billion in PIP claims between 2016 and 2018 [21-1, at 2] and argues that if, as a result of this suit, it has to pay even a small fraction of that amount, such payment will exceed the CAFA requirement.

Plaintiffs begin by pointing out that the proposed class action complaint seeks declaratory and injunctive relief, not any direct monetary damages.  Regarding Proposed Class B, Plaintiffs note that Defendant did not affirmatively allege any particular dollar amount for the diminished value of the PIP policies and argues that Defendant therefore made no plausible allegation of the diminished value of the policies.  Addressing Proposed Class A, Plaintiffs assert that the Michigan lawsuits are separate and not the object of this litigation.  Additionally, Plaintiffs claim that a win in this lawsuit would not cause any insurance benefits or payouts to flow directly to Plaintiffs, and that looking at possible future lawsuits against Defendant following this one would be too speculative to be a plausible allegation. [23, at 4.]  Plaintiffs also state that they are not claiming (in this suit anyway) that any claims were wrongfully denied, and as a result, the $4 billion in payouts that Defendant has made is not an acceptable basis for any amount in controversy calculation.  As a broader point, Plaintiffs argue that Defendant failed to make plausible allegations regarding the amount in controversy and therefore Plaintiffs were not required to submit any evidence on the matter.  [23, at 10.]

The core issue in this case is whether Defendant's "we're investigating" letters violated PIP laws.  Plaintiffs made that the object of the litigation when they asked for such a declaration from this Court.  Plaintiffs alleged two kinds of harm resulting from Defendant's practices relating to the "we're investigating" letters, which can be used to measure the value of the object of

---

[1] Defendant offers more conservative estimates, still over $5,000,000, in the notice of removal.  [1, at 10.]

litigation. *Cf. Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 530 (S.D.N.Y. 2008) (Plaintiffs seeking declaration that an insurer's denial of claim forms were null and void made the value of denied claims the object of litigation, which exceeded the jurisdictional amount under CAFA). For Proposed Class B, the harm Plaintiffs alleged was the diminished value of their PIP policies. [1-1 at ¶¶ 32,34.] For proposed Class A, Plaintiffs alleged that Defendant's practices caused them damages from the prejudice to their ability to assess and, if appropriate, contest Defendant's withholding of payment of PIP benefits. [1-1 at ¶ 40.]

### A. Proposed Class B

Based on Plaintiffs' allegations that the value of their PIP polices was diminished by Defendant's practices, Defendant provided evidence that allows the Court to assess the amount in controversy. Defendant submitted a declaration from Steve Harr, Assistant Vice President & Actuary in the Property & Casualty Actuarial Department for State Farm, which Plaintiffs did not object to or rebut. [21-1.] The declaration states that for each year in 2016 through 2018, in the PIP states, more than 11 million PIP policy holders paid more than $2 billion in premiums. [*Id.*] Neither Plaintiff nor Defendant alleged any exact figure for the diminution of value in these polices. But with that many policy holders and that much in premium paid, it takes very little to exceed the $5 million CAFA requirement. If each of the 11 million policies dropped by just 16 cents per year, that is a $5.2 million diminution in value.[2] Or taking only a single year, if each of the 11 million policies decreased in value by 46 cents, the diminution in value still exceeds $5 million.[3]

---

[2] $0.16 diminution in value x 11,000,000 policyholders x 3 years = $5,280,000.

[3] $0.46 diminution in value x 11,000,000 policyholders = $5,060,000.

That is a plausible allegation, based on Defendant's uncontested evidence. It is admittedly not a precise measurement of the alleged diminished value of the polices, but "[e]stimating the amount in controversy is not nuclear science," as a removing defendant is somewhat constrained by the plaintiff's allegations. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014). As "masters of their complaint," plaintiffs are free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005). In many removal cases, a defendant's allegations rely to some extent on reasonable estimates, inferences, and deductions. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017). Additionally, when a large amount at stake is plausibly alleged, courts can be more confident that future contingencies do not render the allegation too uncertain to qualify as an amount in controversy. See *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014) ("The larger the calculated amount at stake, the easier it is to be confident that collection contingencies should not count for much."); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1270–71 (11th Cir. 2000*)* ("What is only merely possible with respect to one policyholder—a sum of future claims for diminished value with a present value of $75,000—becomes quite probable with respect to over a million policyholders. With that many policies alleged to be in effect, we clearly cannot conclude to a legal certainty that the value of the injunction sought in this case, if viewed in the aggregate, is too uncertain to satisfy the amount in controversy requirement."). Here, across 11 million PIP policy holders and $6 billion in PIP premiums across three years, or even a single year, it is quite probable that, if Plaintiffs' allegations are true and the value of the policies was diminished, the amount exceeds $5 million. At the very least, it is certainly not "legally impossible" for Plaintiffs to recover more than $5 million if their claims have merit, so "the case belongs in federal court." *Back Doctors Ltd.*, 637 F.3d at 830. For

these reasons, Plaintiffs' motion to remand is denied. Because the allegations regarding Class B are sufficient to establish the amount in controversy and this Court's jurisdiction, the Court need not address Proposed Class A.

B.  **Delaware Cases**

The Court will briefly address two opinions, *Nichols*[4] and *First State Orthopedics*[5], on which Plaintiffs rely heavily. As explained below, the Court finds both cases inapposite.

First, Plaintiffs cite a remand order from the District of Delaware in *Nichols*. [17-3 at 2.] In that case, the plaintiff class challenged Chrysler's policy of denying workers' compensation benefits for all instances of spinal cord stimulators. [17-3 at 2-3.] The complaint sought an injunction ordering Chrysler to comply with the applicable workers' compensation laws (*i.e.*, to provide a good faith determination of the reasonableness and medical necessity of spinal cord stimulators on a case-by-case basis). [17-3, at 13.] The complaint did not seek declaratory relief finding that Chrysler had violated any workers' compensation law, or any other statute or regulation.

Second, in regard to *First State Orthopedics*, Plaintiff provided the Court with a 57-page transcript of a hearing on a motion to remand, including the oral ruling of the judge granting the motion. Plaintiffs in *First State Orthopedics* were "trying to [wrest] from the defendants an explanation of why [plaintiffs'] bills ha[d] been denied," [24, at 11] and to vindicate their "right to be informed" about the reasons their claims were denied [*id.* at 14]. The court found that the object of the suit was "to be able to make an informed decision whether or not to challenge

---

[4] *Nichols v. Chrysler LLC*, No. 09-156-ER, slip op. at 1-2 n.1 (D. Del. Oct. 23, 2009) (filed on this docket at [17-1]).

[5] *First State Orthopaedics, P.A. v. Employers Ins. Co. of Wausau, C.A.*, No. 1:19-cv-00509-LPS (D. Del.).(filed on this docket at [24]).

particular denials of claims," [*id*. at 53] and that the plaintiffs were asking for a declaration that this was their statutory right [*id.* at 54.]. The plaintiffs did not seek a declaration that defendants had violated any statute or regulation.

Both cases are distinguishable. The plaintiffs in *Nichols* sought no declaratory relief at all, much less an order stating that Chrysler had broken the law. Rather, the plaintiffs sought an order directing the defendant to give them individual assessments of their medical needs, and the amount in controversy was a "projection of the number of class members who, (based on past experiences) are likely to benefit individually from the relief, times the cost of the relief," which the defendants did not present to the court. [17-1, at 3.] Here, Plaintiffs primarily seek declaratory relief, not an injunction, and Defendants have provided uncontested estimates of the values necessary to determine whether the amount in controversy exceeds $5 million.

*First State Orthopedics* was removed to federal court on diversity jurisdiction, not under CAFA, so there was no presumption of removal and doubts were to be resolved in favor of remand. That is, in fact, how the court explained its decision to remand. [24, at 53 ("[T]he law is clear that I should be exercising doubts in this context in favor of remand and against removal of a state court case to federal court. And I do have some doubts and I'm resolving them in favor of the plaintiff.").] That alone is enough to materially distinguish it from the instant case. Furthermore, the declaratory relief at issue was a statement that plaintiffs had a right to be informed about the reasons for denials of their claims. While Plaintiffs in this case also claim that Defendant kept them from being informed about the reasons that benefits were withheld, here Plaintiffs do not seek any explanation from Defendant. Rather, they seek a ruling that Defendant violated the law. Thus their "right to be informed" is not the object of the litigation; the object is a declaration that Defendant violated the law, which resulted in, among other things, diminished PIP policy values

11

for Plaintiffs. Neither *Nichols* nor *First State Orthopedics* has the same request for relief or object of litigation as this case, and neither persuades the court that remand is appropriate here.

IV. **Conclusion**

For the reasons explained above, Plaintiffs' motion to remand [16] is denied. Given the passage of time and the current COVID-19 crisis, Defendant's unbriefed motion to dismiss [11] is stricken without prejudice to refiling on or before April 20, 2020. The parties are directed to submit a joint status report by April 27, 2020 proposing a briefing schedule for the motion to dismiss. This case is set for further status hearing on April 30, 2020.

Dated: March 24, 2019

_____
Robert M. Dow, Jr.
United States District Judge